MINCEY & FITZPATRICK, LLC        *Counsel for Plaintiff*
BY: Kevin V. Mincey, Esquire        *Montrice Bolden*
      Thomas O. Fitzpatrick, Esquire
IDENTIFICATION NOs.: 90201/93204
1500 John F. Kennedy Blvd., Suite 1525
Philadelphia, PA 19102
215-587-0006

## IN THE UNITED STATES OF AMERICA DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTRICE BOLDEN<br>4162 Fargo St.<br>Erie, PA 16510 | CIVIL ACTION NO. 17-228 |
|         Plaintiff | |
| v. | |
| City of Erie, Pennsylvania<br>626 State Street<br>Erie, PA 16501 | |
| and | |
| STEVEN DELUCA, Police Officer<br>Erie Police Dept.<br>626 State Street<br>Erie, PA 16501 | |
| and | |
| IRA BUSH, Police Officer<br>Erie Police Dept.<br>626 State Street<br>Erie, PA 16501 | |
| and | |
| WILLIAM GOOZDICH, Police Officer<br>Erie Police Dept.<br>626 State Street<br>Erie, PA 16501 | |
| and | |
| JACOB SACK, Police Officer<br>Erie Police Dept.<br>626 State Street<br>Erie, PA 16501 | |
| and | |

1

NICK STADLER, Police Officer         :
Erie Police Dept.                     :
626 State Street                      :
Erie, PA 16501                       :
                                          :
and                                   :
                                          :
JERRY STEVENS, Police Officer    :
Erie Police Dept.                     :
626 State Street                      :
Erie, PA 16501                       :
                                          :
                    Defendants.     :
                                          :

## SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.     This is a civil rights action brought by Plaintiff Montrice Bolden, to vindicate profound deprivations of his constitutional rights caused by senseless police brutality committed by members of the City of Erie Police Department and the City of Erie.  This action, which seeks both compensatory and punitive damages, is brought pursuant to 42 U.S.C. § 1981, 1983 and 1988.  It raises Fourth and Fourteenth Amendment Constitutional violations and supplemental state law claims concerning the actions of defendant City of Erie police officers including, *inter alia*, the use of excessive force against Plaintiff, failure to intervene, race-based enforcement discrimination, conspiracy to violate Plaintiff's federally protected rights, and a *Monell* claim against the City of Erie, as well as state law actions of assault and battery and intentional infliction of emotional distress.

2.     The police officer defendants, acting in the course and scope of their employment with the city of Erie and under the color of state law, took custody of an unarmed, weaponless, 41 year-old African-American man, restrained Plaintiff by each arm while a

2

third defendant punched Plaintiff multiple times in his face, forcibly took Plaintiff to the ground while his arms and hands were held behind his back, handcuffed Plaintiff, used a taser on Plaintiff while Plaintiff was handcuffed on the ground, kicked and punched Plaintiff about his body while he lay in a prone position handcuffed on the ground, forcefully slammed Plaintiff's head and upper body into the windshield of an unmarked patrol vehicle, causing Plaintiff's face to hit the windshield with so much force that the windshield cracked, pushed Plaintiff's face into the windshield while they dragged his face from the windshield to the hood of the unmarked patrol vehicle, slammed the back of Plaintiff's head into the roof of the car as they forced him into the unmarked patrol vehicle, and provided false statements that Plaintiff attempted to disarm and assault defendant police officers.  The conduct of the police officer defendants caused serious injury to Plaintiff, which required hospitalization.  Under well-established law on the use of excessive force as well as other implicated constitutional rights, the police officer defendants are not entitled to qualified immunity or other immunity for these actions.

3.	The actions and conduct of the defendant police officers are the result of policies, practices, customs, procedures, and the indifference of the City of Erie Police Department and defendant City of Erie.

**JURISDICTION**

4.	This action is brought pursuant to 28 U.S.C. §1331 and §1343.  This action arises under the provisions of the Civil Rights Act of 1866, as amended 42 U.S.C. §1983. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to adjudicate claims arising under state law.

3

**VENUE**

5.      Venue is appropriately laid in this Court pursuant to 28 U.S.C. §1391(b) in that

the actions complained of took place in Erie, which is within the bounds of the Western

District, and Defendants carry on business within the Western District.

**PARTIES**

6.      Plaintiff, Montrice Bolden ("Plaintiff"), is an adult individual and citizen of the

United States, who resides at 4162 Fargo Street, Erie, PA, 16510.

7.      Defendant, City of Erie (hereinafter referred to as "Defendant City") is a

municipal corporation duly organized, existing, and operating pursuant to the applicable

laws of the Commonwealth of Pennsylvania, which at all relevant times owned, operated,

managed, directed and controlled the Erie Police Department, which employs the

defendant police officers named herein.  As such, Defendant City had responsibility for

hiring, training, supervising, disciplining, and the retention of police officers employed

by Defendant City, including the defendant police officers named herein.  Furthermore,

as a municipal corporation, Defendant City was charged with responsibility for and was

empowered to establish, regulate, and control its police department for the enforcement

of laws within its jurisdiction and for purposes of protecting and preserving the properties

and persons within the geographical and legal jurisdiction of Defendant City of Erie.  As

such, Defendant City is a proper entity to be sued under 42 U.S.C. §1983.

8.      Defendant City is properly sued directly under 42 U.S.C. §1983, as it

participated, ratified or acquiesced in maintaining Erie Police Department police

practices, customs, policies, usages or procedures which were moving forces in the

complained-of constitutional and state law violations of Plaintiff's rights and resulting

4

injuries; and further participated or acquiesced in the hiring and/or inadequate training and/or supervision of defendant police officers named herein.

9.      At all times relevant to this action, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Plaintiff.

10.      Defendant, Steven Deluca, Police Officer (hereinafter referred to as Defendant Deluca) was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

11.      Defendant Deluca is sued in his individual and official capacities and at all times relevant hereto was acting under the color of his/her official capacity and his/her acts were performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

12.      Defendant Ira Bush, Police Officer (hereinafter referred to as "Defendant Bush") was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

13.      Defendant Bush is sued in his/her individual and official capacities and at all times relevant hereto was acting under the color of his/her official capacity and his/her acts were performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

14.      Defendant William Goozdich, Police Officer (hereinafter referred to as "Defendant Goozdich") was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

15.      Defendant Goozdich is sued in his individual and official capacities and at all times relevant hereto was acting under the color of his official capacity and his acts were

5

performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

16.     Defendant Jacob Sack, Police Officer (hereinafter referred to as "Defendant Sack") was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

17.     Defendant Sack is sued in his individual and official capacities and at all times relevant hereto was acting under the color of his official capacity and his acts were performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

18.     Defendant Nick Stadler, Police Officer (hereinafter referred to as "Defendant Stadler") was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

19.     Defendant Stadler is sued in his individual and official capacities and at all times relevant hereto was acting under the color of his official capacity and his acts were performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

20.     Defendant Jerry Stevens, Police Officer (hereinafter referred to as Defendant Stevens) was at all relevant times a police officer with the Police Department of the City of Erie, Pennsylvania.

21.     Defendant Stevens is sued in his individual and official capacities and at all times relevant hereto was acting under the color of his official capacity and his acts were performed under color of the statutes and ordinances of the City and County of Erie and the Commonwealth of Pennsylvania.

6

**FACTS**

22.     On June 27, 2016, at approximately 11:51 pm, Plaintiff was lawfully parked in his vehicle in the parking lot of TJ's Traffic Jam (hereinafter referred to as "TJ's"), located in the area of 1100 Wayne St. in Erie, Pennsylvania.

23.      At the time of the incident giving rise to this Complaint, Plaintiff was an unarmed, weaponless, 6'0", 200 lb. African-American man.

24.     Defendants Deluca and Stadler were working as partners on June 27, 2016.

25.     Defendants Deluca and Stadler observed Plaintiff's vehicle parked in the parking lot at TJ's running with the lights on.

26.     Defendants Deluca and Stadler did not observe any criminal activity.

27.     Defendants Deluca and Stadler circled the block in their police vehicle in order to further investigate the vehicle and observed Plaintiff's car still in the parking lot running but now with the lights off.

28.     Defendants Deluca and Stadler approached Plaintiff's car and observed him inside.

29.     Additional police vehicles responded to investigate a car parked in the parking lot behind TJ's.

30.     Five police officers were present when Defendant Deluca approached the drivers side of Plaintiff's vehicle.

31.     One of the police officers – unknown to Plaintiff at this time – was observed standing approximately 50 feet behind Defendants Deluca and Stadler putting on black gloves, apparently preparing himself for a physical altercation with Plaintiff.

32.     Defendant Deluca ordered Plaintiff from his car.

7

33.     In fear of being assaulted, Plaintiff attempted to flee, but took approximately two steps before he was stopped by Defendants Deluca and Stadler.

34.     Defendants Deluca and Stadler held Plaintiff by each arm.

35.     While being held by Defendants Deluca and Stadler, a third defendant - unknown to Plaintiff at this time -  punched Plaintiff multiple times in his face.

36.     Plaintiff was then forcefully taken to the ground while his arms and hands were held behind his back.

37.     Plaintiff was handcuffed by the defendants.

38.     Defendant Bush used his taser on Plaintiff while Plaintiff was handcuffed on the ground.

39.     Plaintiff was kicked and punched about his body while he lay in a prone position, handcuffed on the ground.

40.     Defendants pulled Plaintiff off of the ground, forcing him to stand on his feet.

41.     Defendants then forcefully slammed Plaintiff's head and upper body into the windshield of an unmarked patrol vehicle.

42.     Plaintiff's face hit the windshield with so much force that the windshield cracked.

43.     Defendants then pushed Plaintiff's face into the windshield while they dragged his face from the windshield to the hood of the unmarked patrol vehicle.

44.     Defendants then slammed the back of Plaintiff's head into the roof and door jamb of the car as they forced him into the unmarked patrol vehicle.

45.     TJ's utilizes video to record the parking lot where Plaintiff was assaulted.

46.     The assault of Plaintiff by the Defendants was captured on video (hereinafter, the "TJ video").

8

47.     A copy of the TJ video was provided to Counsel by the Erie County District Attorney's office.

48.     The TJ video shows two uniformed officers holding Plaintiff's arms outstretched while a third uniformed officer punches Plaintiff multiple times.

49.     The TJ video also shows multiple uniformed police officers punching and kicking Plaintiff while he lays handcuffed on the ground.

50.     The TJ video shows uniformed officers slamming Plaintiff's face into the windshield of an unmarked patrol car.

51.     The TJ video shows uniformed officers slamming the back of Plaintiff's head into the roof and door jamb of an unmarked patrol car.

52.     Plaintiff was taken University of Pittsburgh Medical Center at Hamot (hereinafter "UPC-Hamot") complaining of facial pain and an inability to open his right eye.

53.     Plaintiff was diagnosed with an acute fracture of his right orbital bone along with other injuries.

54.     The incident occurred while Plaintiff was in a non-threatening and defenseless physical position, unarmed, and completely unable to pose any threat to others or defend himself.

55.     Plaintiff did not attempt to disarm any police officer on June 27, 2016.

56.     Plaintiff did not assault or attempt to assault any police officer on June 27, 2016.

57.     Any injuries suffered by Defendants during the arrest of Plaintiff were the result of the vicious assault that defendants purposefully executed against Plaintiff.

9

58.   Other Erie police officers, along with the defendant police officers named herein, were present and had the opportunity and duty to intervene and stop the assault and excessive use of force on Plaintiff.

59.   At no time during the incident did any of the officers present, including the defendant officers named herein, take any action to stop the assault, or to take control of the situation.

60.   Immediately after being assaulted by Defendants, Plaintiff was experiencing pain.

61.   As set forth more fully below, Defendants intentionally used excessive force against the Plaintiff, which was unreasonable, unjustifiable, and unconstitutional.

62.   At all relevant times, Defendants knew or should have known that their actions were in violation of Plaintiffs Fourth and Fourteenth Amendment Rights.

63.   Defendants' actions, and the underlying motivation for their actions, were conscience-shocking, and carried out without conscious regard or due care for Plaintiff or the foreseeable consequences of their actions, and with such wanton and reckless disregard of the consequences as to show Defendants' deliberate indifference to the danger of harm and injury to Plaintiff.

64.   As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered and continues to suffer deprivation of his rights, fear, and horror, all to Plaintiff's great detriment and loss.

65.   As a direct and proximate cause of Defendants' actions and inactions, Plaintiff suffered and was made to undergo physical pain and horrible mental anguish, all to his great detriment, financial detriment, and personal loss.

10

66.     Plaintiff's serious injuries were a foreseeable and direct result of the actions and inactions of all Defendants.

67.     Defendants violated Plaintiff's clearly established and well-settled federal constitutional rights, including, but not limited to, his right to personal security, and his right to be free from the use of excessive, unreasonable and unjustified force.

68.     Furthermore, the Constitutional violations suffered by Plaintiff were the result of Defendant City's policies, procedures, customs, and practices of allowing its officers to use unreasonable and excessive force, thereby violating the civil rights of those with whom they come into contact.

69.     Defendant City has maintained, with the deliberate indifference to the impact on citizens, an inadequate system of review of instances of misconduct, abuse of police powers or violation of citizens' rights by police officer, a system which has failed to identify instances of abuse of police powers or violations of citizens' rights by police officers, discipline, more closely supervise, or retain officers who abuse their police powers or violate citizens' rights, including the police officers named as parties herein.

70.     Defendant City was deliberately indifferent to the need for more or different training, rules, regulations, investigations and discipline relating to police officers' use of excessive force, as set forth above.

71.     The foregoing acts, omissions, systemic deficiencies, practices, customs and deliberate indifference constitutes the policies, practices, and customs of Defendant City, and have caused police officers of Defendant City, including the police officers named as parties herein, to violate the constitutional rights of citizens, including Plaintiff.

11

72.     The rights, violations, and injuries suffered by Plaintiffs were a foreseeable result

of the policies, practices, customs, and deliberate indifference of Defendant City.

**<u>COUNT I</u>**
**VIOLATION OF THE FOURTH AMENDMENT: EXCESSIVE FORCE;**
**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND**
**FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983**
**PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH,**
**WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY**
**<u>STEVENS</u>**

73.     The allegations set forth in the preceding paragraphs are incorporated as though

fully set forth herein.

74.     Title 42 U.S.C. § 1983 ("Section 1983") provides in pertinent part:

> Every **person** who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or
> other **person** within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress…

75.     Plaintiff is a citizen of the United States and all of the individual police officer-

defendants to this claim are persons for the purpose of Section 1983.

76.     All individual defendants to this claim, at all times relevant hereto, were acting

under the color of state law in their capacity as City of Erie police officers and their acts

or omissions were conducted within the scope of their official duties or employment.

77.     At the time of the complained-of events, Plaintiff had a clearly established

constitutional right under the Fourth and Fourteenth Amendments to be free from the use

of excessive force against him by police officers.

12

78.     Any reasonable officer knew or should have known of these rights at the time of the complained-of conduct as they were clearly established at that time.

79.     Use of force by police officers is excessive, and therefore violates the Fourth amendment if it is not reasonable in light of the circumstances facing the officer.  *See Graham v. Connor*, 490 U.S. 386, 398 (1989).

80.     Defendant-police officers' actions and use of force, as described throughout, were objectively unreasonable in light of the facts and circumstances confronting them and violated the constitutional rights of Plaintiff.  Defendants utilized excessive force by performing the following actions: Defendants Deluca and Stadler restraining Plaintiff by each arm while a third defendant punched Plaintiff multiple times in his face; forcibly taking Plaintiff to the ground while his arms and hands were held behind his back; handcuffing Plaintiff; Defendant Bush's use of his taser on Plaintiff while Plaintiff was handcuffed on the ground; all Defendant-Police Officers' acts of kicking and punching Plaintiff about his body while he lay in a prone position, handcuffed on the ground; Defendant-Police Officers' forcefully slamming Plaintiff's head and upper body into the windshield of an unmarked patrol vehicle, causing Plaintiff's face to hit the windshield with so much force that the windshield cracked; Defendant-Police Officers' act of pushing Plaintiff's face into the windshield while they dragged his face from the windshield to the hood of the unmarked patrol vehicle; and Defendant-Police Officers' act of slamming the back of Plaintiff's head into the roof of the car as they forced him into the unmarked patrol vehicle.

13

81.     Moreover, Defendant-police officers had no reasonable fear of imminent bodily harm from Plaintiff towards them or anyone else when they chose to attackand assault Plaintiff.

82.     Defendants-police officers' actions and use of force against Plaintiff, as described herein, were also willful, malicious and/or involved reckless, callous, and deliberate disregard to Plaintiff's federally protected rights,  and were designed to and did cause serious injury and pain and suffering in violation of plaintiff's rights as guaranteed under 42 U.S.C. § 1983 and the Fourth and Fourteenth amendments.

83.     These individual defendants are not entitled to qualified immunity for the complained-of conduct.

84.     The acts and omissions of Defendant-police officers as described herein intentionally deprived Plaintiff of his constitutional rights noted above and caused him to suffer other damages and losses as set forth in this complaint, entitling him to recovery of compensatory and special damages in amounts to be determined at trial.

85.     In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against each of the individually named defendants under 42 U.S.C. § 1983, in that the actions of these individuals were done maliciously, willfully, or with  reckless or wanton disregard of the constitutional rights of Plaintiff.

86.     Plaintiff is further entitled to attorney's fees and the cost of prosecution of this suit pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

14

<u>COUNT II</u>
**LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER –**
**FAILURE TO INTERVENE:**
**DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983**
**PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH,**
**WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY**
<u>STEVENS</u>

87.    The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

88.    Each defendant had a duty to intervene to prevent and/or stop the ongoing Constitutional violations of Plaintiff's federally protected rights as claimed herein by the other defendants.

89.    Each defendant had a reasonable opportunity to intervene, to prevent, and/or stop the ongoing Constitutional violations of Plaintiff's federally protected rights as claimed herein.

90.    None of the defendant-officers took any steps to intervene to protect Plaintiff from the conscience-shocking excessive force of other defendant-officers, despite being in a position to do so.

91.    As a result of defendants' failure to intervene, Plaintiff's constitutional rights were violated as alleged herein and each defendant is liable for the harm and damages of the Plaintiff as set forth above.

92.    The failure of defendants to intervene as described herein intentionally deprived Plaintiff of his constitutional rights noted above and caused him to suffer other damages and losses as set forth in this complaint, entitling him to recovery of compensatory and special damages in amounts to be determined at trial.

15

93.     In addition to compensatory, economic, consequential, and special damages,

Plaintiff is entitled to punitive damages against each of the individually named

defendants under 42 U.S.C. § 1983, in that the actions of these individuals were done

maliciously, willfully, or with reckless or wanton disregard of the constitutional rights of

Plaintiff.

94.     Plaintiff is further entitled to attorney's fees and the cost of prosecution of this

suit pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal

law.  There may also be special damages for lien interests.

**COUNT III**
**RACIAL DISCRIMINATION: DEPRIVATION OF RIGHTS UNDER THE**
**EQUAL PROTECTION CAUSE OF THE FOURTEENTH AMENDMENT AND**
**42 U.S.C. § 1981 AND § 1983**
**PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH,**
**WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY**
**STEVENS**

95.     The allegations set forth in the preceding paragraphs are incorporated as though

fully set forth herein.

96.     At the time of the complained-of events, Plaintiff had a clearly established

constitutional right to be free from racial discrimination in law enforcement by police

officers and to enjoy equal protection of the laws.

97.     Title 42 U.S.C. § 1981 ("Section 1981") provides in pertinent part:

> (a) all persons within the jurisdiction of the United States
> shall have the same right in every State and  Territory
> to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions
> of every kind, and to no other.

98.     Plaintiff, as an African-American, is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from racially motivated beatings.

99.     Any reasonable officer knew or should have known of these rights at the time of the complained-of conduct as they were clearly established at that time.

100.    Plaintiff's race was a motivating factor in the decisions of the defendant officers to unlawfully stop and seize Plaintiff and use excessive force against him.  Defendants' conduct was motivated by a purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment and §1981.

101.    Defendants-police officers engaged in conduct described in this complaint willfully, maliciously, in bad faith, and involved reckless, callous, and deliberate disregard to Plaintiff's federally protected rights.

102.    These individual defendants are not entitled to qualified immunity for the complained-of conduct.

103.    The acts and omissions of Defendant-police officers as described herein intentionally deprived Plaintiff of his constitutional rights noted above and caused him to suffered other damages and losses as set forth in this complaint, entitling him to recovery of compensatory and special damages in amounts to be determined at trial.

104.    In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against each of the individually named defendants under 42 U.S.C. § 1983, in that the actions of these individuals were done

maliciously, willfully, or with reckless or wanton disregard of the constitutional rights of Plaintiff.

105.    Plaintiff is further entitled to attorney's fees and the cost of prosecution of this suit pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

**COUNT IV**
**CONSPIRACY TO DEPRIVE PLAINTIFF'S RIGHTS**
**UNDER 42 U.S.C. § 1983**
**PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH,**
**WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY**
**STEVENS**

106.    The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

107.    At all times during the events on June 27, 2016, the defendant-police officers named herein engaged in a joint venture.  The individual police officers assisted each other in performing the various acts described, lent their physical presence and support and the authority of their office to each other during the said event, and subsequently, in order to cover up their unwarranted assault upon Plaintiff, conspired to fabricate claims about Plaintiff, namely, that he lunged for one of their weapons, all while failing to report their wrongdoing to other officials within the Erie Police Department.

108.    The defendant-officers participated in a conspiracy to assault Plaintiff, conspired to fabricate claims about Plaintiff, namely, that he lunged for one of their weapons, and as a part of this conspiracy failed to report their wrongdoing to other officials within the Erie Police Department.

18

109.    This conspiracy, as it applies to Plaintiff, was an express and/or implied agreement between the defendant-officers and others to deprive the plaintiff of his Constitutional rights to be free from the unlawful use of force against him.

110.    The defendants were voluntary participants in the common venture, understood the general objectives of the venture, knew it involved the likelihood of the deprivation of constitutional rights, accepted those general objectives, and then agreed either explicitly or implicitly to do their part to further those objectives.

111.    The defendant officers acted or failed to act in a manner intended to facilitate the deprivation of Plaintiff's constitutional rights as alleged.

112.    An actual deprivation of those rights did occur to Plaintiff resulting from the said agreement of common design and the foreseeable consequences thereof.

113.    The individual defendants are jointly and severally responsible for the injuries caused by their co-conspirators, even if or when their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

114.    As a result of the conspiracy entered into and acted upon by individual defendants and other co-conspirators whose identity is presently unknown to Plaintiff, Plaintiff suffered deprivation of his constitutional rights, and continues to suffer physical injuries, pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, and/or related financial losses.

115.    The acts and omissions of Defendant-police officers as described herein intentionally deprived Plaintiff of his constitutional rights noted above and caused him to suffered other damages and losses as set forth in this complaint, entitling him to recovery of compensatory and special damages in amounts to be determined at trial.

19

116.    In addition to compensatory, economic, consequential, and special damages,

Plaintiff is entitled to punitive damages against each of the individually named

defendants under 42 U.S.C. § 1983, in that the actions of these individuals were done

maliciously, willfully, or with  reckless or wanton disregard of the constitutional rights of

Plaintiff.

117.    Plaintiff is further entitled to attorney's fees and the cost of prosecution of this

suit pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal

law.  There may also be special damages for lien interests.

**COUNT V**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. §1983: DELIBERATELY**
**INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING, AND**
**SUPERVISION IN VIOLATION OF THE FOURTH AND FOURTEENTH**
**AMENDMENTS AND IN VIOLATION OF 42 U.S.C. §1983**
**PLAINTIFF VS. DEFENDANT CITY OF ERIE**

118.    The allegations set forth in the preceding paragraphs are incorporated as though

fully set forth herein.

119.    Defendant City, at all times relevant hereto was acting under the color of state

law.

120.    Plaintiff had the following clearly established rights at the time of the conduct

complained-of in this action:

   a.   The right, under the Fourth and Fourteenth Amendments to be free from
        excessive force by police officers;

   b.   The right, under the Fourth and Fourteenth Amendments to have other
        police officers intervene to prevent and/or stop the use of such excessive
        force;

   c.   The right, under the equal protection clause of the under the Fourteenth
        Amendment and under 42 U.S.C. §1981 to be free from discrimination by
        police.

20

121.    Defendant City knew or should have known of these rights at the time of the complained-of conduct as they were clearly established at that time.

122.    Municipalities may be held liable under Section 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if Defendant City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

123.    With deliberate indifference to the rights of citizens to be free from excessive force by its police officers, Defendant City has encouraged, tolerated, ratified, tacitly sanctioned and/or acquiesced to a dangerous environment of police brutality by:

      a.    Failing to conduct sufficient training, monitoring or supervision of its police officers regarding the constitutional limitations on the use of force;

      b.    Failing to adequately punish or discipline unconstitutional uses of force by its police officers;

      c.    Tolerating the unconstitutional force by its police officers;

      d.    Failing to properly and neutrally investigate citizen complaints of excessive force; and

      e.    Tolerating, encouraging, and permitting collusive statements and misreporting or non-reporting of events by involved officers in such situations so as to allow such officers to cover up their own wrongdoing in the improper use of force against the public.

124.    It has been the longstanding widespread deliberately indifferent policy, practice and/or custom of Defendant City, acting through its police department and its police officers to use excessive force against citizens of Defendant City when such use is unnecessary and unjustified, as well as to fail to supervise and to train police officers on

the constitutional limitations on the use of force, knowing that these members of law enforcement pose a significant risk of injury to the public.

125.    With deliberate indifference to the rights of citizens to be free from racism in law enforcement, Defendant City has encouraged, tolerated, ratified, tacitly sanctioned and/or acquiesced to police racism by:

> a. Failing to conduct sufficient training, monitoring or supervision with respect to the rights of citizens to be free from racism from law enforcement;
>
> b. Failing to adequately punish race-based law enforcement actions;
>
> c. Tolerating racism, slurs, and race-based selective law enforcement among the police force and in police decisions;
>
> d. Failing to properly and neutrally investigate citizen/community complaints of racism, sue of racial slurs, racial profiling, race-based animus, and tolerating collusive statements by involved officers in such situations; and
>
> e. Failing for decades to hire additional minority police officers.

126.    It has been the longstanding widespread deliberately indifferent policy, practice and/or custom of Defendant City, acting through its police department and its police officers, to condone and/or permit police officers to use race and race-based animus as motivating factors in its police decisions and actions, as well as to fail to supervise and to train officers in the rights of citizens of Defendant City to be free from such race-based decision-making in law enforcement.

127.    Defendant City knew and/or should have known of the longstanding effects of racism upon the decisions and actions of officers in the Erie Police Department (EPD). For example, in addition to many continuing complaints about claims of racial profiling and treatment of minorities by the EPD, the Civic Institute of Mercyhurst College published *Analysis of Police Stops and Searches City of Erie, PA – Prepared on Behalf of*

22

*the City of Erie.*  This study was designed to gauge the presence or absence of racial disparity in officer-initiated vehicle stops, pedestrian stops and searches.  The study analyzed 2,162 vehicle stops by the EPD over a 6 month period of September 1, 2001 through February 28, 2002.  Among its data-based findings were the following:

     a.  The  actual number of motor vehicle stops of minorities was significantly greater than expected, based upon the citywide minority population;

     b.  Minorities are significantly more likely to be stopped in high discretion circumstances than are non-minorities; and

     c.  Minorites are significantly more likely to be searched than non-minorities.

*See Analysis if Police Stops and Searches City of Erie, PA, April 2002*, pp. 33-34.

128.    With deliberate indifference to the rights of citizens, Defendant City has encouraged, tolerated, ratified, tacitly sanctioned and/or acquiesced to the cover-up efforts by police officers by all-too-often accepting and rubber-stamping police accounts of police misconduct complaints brought or made by citizens.

129.    It has been the longstanding widespread deliberately indifferent policy, practice and/or custom of Defendant City to inadequately investigate and find no fault with police conduct in the face of citizen-brought complaints of police misconduct, so that acts of police misconduct have instead been tolerated by Defendant City.

130.    It has been the longstanding widespread deliberately indifferent policy, practice and/or custom of Defendant City to inadequately train, supervise, and discipline its police officers, thereby failing to adequately discourage constitutional violations committed by its police officers against the public.

131.    As a result of the above-described policy, practice and/or custom of Defendant City, the police officers of the EPD, including the police officers in this case, have

23

believed that their actions would not be properly monitored by supervisory officials and that misconduct would not be investigated or sanctioned, but would be tolerated.

132.     The deliberately indifferent custom, habit, policy, decision, practice, training and supervision of Defendant City and its EPD in the regards identified above, has effectively tolerated and encouraged lawlessness and disregard for the federal rights of citizens of Defendant City by EPD officers.

133.     At the time the individual defendant-officers unlawfully assaulted and injured Plaintiff, said officers were acting pursuant to Defendant City's longstanding policies, practices, custom and procedures that overlooked and/or authorized and/or condoned and/or fostered the above described unconstitutional conduct of the individual defendant police officers.  *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 659 (1978).

134.     The above-described conduct of the individual defendant police officers alleged in this action was a direct consequence of the above-described widespread, deliberately indifferent custom, habits, practices, usage and/or policies of Defendant City.

135.     Thus, Defendant City's above-described widespread, deliberately indifferent custom, habits, practices, usage and/or policies demonstrated a deliberate indifference to the constitutional rights of the public, and were a direct and proximate cause of the violations of Plaintiff's constitutional and statutory rights alleged herein.

136.     Defendant City's above-described widespread, deliberately indifferent custom, habits, practices, usage and/or policies were a direct and proximate cause of Plaintiff's above-described injuries, damages and losses.

24

137.   Said conduct of Defendant City entitles Plaintiff to recovery of compensatory and special damages in an amount to be determined at trial.

138.   Plaintiff is further entitled to attorney's fees and the cost of prosecution of this suit pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

## COUNT VI
## STATE LAW ASSAULT AND BATTERY
## PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH, WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY STEVENS

139.   The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

140.   By the conduct and actions described above, defendant-police officers inflicted the torts of assault and battery upon Plaintiff.  The acts and conduct were the direct and proximate cause of the injuries and damages to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the Commonwealth of Pennsylvania.

141.   Defendants' acts constituted assault upon Plaintiff in that Defendants intended to and actually placed Plaintiff in fear of imminent, unwarranted, unprivileged, offensive bodily contact.

142.   Defendants' acts constituted battery upon Plaintiff in that the above-described bodily contact was intentional, unauthorized, and grossly offensive in nature.

143.   Defendants' acts were intentional, reckless, unwarranted, and without just cause or provocation, and said defendants knew or should have known that their actions were without the consent of Plaintiff.

25

144.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, and was otherwise injured and damaged as set forth in this Complaint.

**COUNT VII**
**STATE LAW INTENTIONAL INFLICTION**
**OF EMOTIONAL DISTRESS**
**PLAINTIFF VS. DEFENDANT OFFICERS STEVEN DELUCA, IRA BUSH,**
**WILLIAM GOOZDICH, JACOB SACK, NICK STADLER, AND JERRY**
**STEVENS**

145.    The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

146.    The conduct and actions described above of Defendant-police officers was extreme, outrageous and utterly intolerable in a civilized community.

147.    Said above-described conduct exceeded all reasonable bounds of decency.

148.    Said above-described conduct was intended to and did causer severe emotional distress to Plaintiff.

149.    The acts and conduct were the direct and proximate cause of the injuries and damages to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the Commonwealth of Pennsylvania.

150.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, and was otherwise injured and damaged as set forth in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court find and determine, after trial by jury as appropriate, that Plaintiff suffered substantial and continuing injury as a result of

26

deprivation of his civil and Constitutional rights, and otherwise wrongful conduct and award the following relief, as appropriate:

i)      Compensatory and consequential damages, including damages for economic losses, emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims against all defendants;

ii)     Punitive damages on all claims allowed by law against the individual defendants;

iii)    Award of all reasonable Attorneys' fees and costs associated witht his action to Plaintiff under 42 U.S.C. §1988, including expert witness fees, on all claims allowable by law;

iv)     Pre- and post-judgment interest at the lawful rate; and

v)      Any further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

151.    The allegations set forth in the preceding paragraphs are incorporated as though fully set forth herein.

152.    Pursuant to F.R.C.P. 38, a jury trial is demanded.


By: /s/: Kevin V. Mincey
    Kevin V. Mincey, Esquire
    Thomas O. Fitzpatrick, Esquire
    Attorney IDs: 90201/93204
    Mincey Fitzpatrick, LLC
    1500 JFK Blvd., Suite 1525
    Philadelphia, PA 19102
    215-587-0006 (p)
    215-587-0628 (f)
    Kevin@minceyandfitz.com
    Tom@minceyandfitz.com
    *Counsel for Plaintiff Montrice Bolden*

27

**<u>VERIFICATION</u>**

I, Montrice Bolden, hereby verify that the facts set forth in the foregoing Second Amended Complaint are true and correct to the best of his knowledge, information and belief, and that this is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

By: <u>/s/ Montrice Bolden</u>
      Montrice Bolden

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin V. Mincey, hereby certify that on this date, the attached *Second Amended*

*Complaint* was served according to the Federal Rules of Civil Procedure upon the

following individuals:

City of Erie, Pennsylvania
626 State Street
Erie, PA 16501

STEVEN DELUCA, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

IRA BUSH, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

WILLIAM GOOZDICH, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

JACOB SACK, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

NICK STADLER, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

JERRY STEVENS, Police Officer
Erie Police Dept.
626 State Street
Erie, PA 16501

By: /s/: Kevin V. Mincey _____
Kevin V. Mincey

Date: April 4, 2018

29